## A. R. Colburn et al.
## v.
## Samuel P. Barton.

1. Levy—Satisfaction of judgment.—The mere levy of an execution
on personal property sufficient to satisfy it without anything more, never
amounts to a satisfaction of the judgment. So long as the property remains
in legal custody, the other remedies of the creditor will be suspended.

2. Release of levy.—Where plaintiffs bought certain lumber of de-
fendant and a levy to satisfy a judgment existing at the time of sale upon
which execution had issued against defendant, was placed by defendant's
direction on such property after its sale to plaintiffs, and plaintiffs, to whom
such judgment had been assigned, ordered the sheriff to release such levy

and an alias execution was issued by plaintiffs and levied on real estate of defendant. *Held*, that the second execution and levy and sale thereunder were good.

Error to the County Court of Lawrence county; the Hon. Philip W. Barnes, Judge, presiding. Opinion filed November 27, 1885.

Messrs. Bell & Green and Mr. William Robinson, for plaintiff in error; cited Smith v. Hughes, 24 Ill. 270; Howard v. Bennett, 72 Ill. 297; Montgomery v. Wayne, 14 Ill. 373; Smith v. Lozano, 1 Bradwell, 171.

Messrs. Huffman & Meserve, for defendant in error; that the judgment was a lien upon the property before the bill of sale was executed, and the levy having been made within the life of the execution the lien related back to the time of the delivery of the execution to the officer, and the bill of sale was subject to such lien, cited Marshall v. Cunningham, 13 Ill. 20; Leach v. Pine, 41 Ill. 65; Stephenson v. Browning, 48 Ill. 78.

Wilkin, J. This case originated in the court below on a motion by defendant in error to quash an execution. In his sworn petition he states in substance that at the October term, 1882, of said court, James and Scott Emison obtained a judgment against him for $481.13 and $6.90 costs. That on the 28th of November following execution issued thereon, which on the 20th of February, 1883, was levied on a large quantity of lumber worth one thousand dollars, and sufficient to fully satisfy the same. That the property at the time of the levy belonged to him. That March 3, 1883, pending the lien of the execution, the said judgment was assigned to plaintiffs in error, who on the same day ordered the levy released and the property discharged from the said execution, and the same was so released and discharged without his knowledge or consent. That on the 23d of January, 1885, this execution issued and was levied on real estate of defendant which was sold to plaintiffs in error. On the hearing of the motion plaintiffs in error introduced in

Colburn v. Barton.

evidence a bill of sale for the lumber levied on. The consideration in said bill of sale is stated to be $895.47. It is dated the 2d day of February, 1883; executed under the hand and seal of Samuel P. Barton and to A. R. Colburn & Co. Also the proceedings in a replevin suit between the same parties for the property mentioned in the said bill of sale and levy, wherein A. R. Colburn & Co. were plaintiffs and Samuel P. Barton was defendant, in which the judgment of the County Court of Lawrence county found the property in plaintiffs. Also the evidence of Edmund Ryan, sheriff of Lawrence county, who testified: "The property included in the bill of sale from Barton to Colburn & Co. was turned out to me by Barton on the execution issued against him on the Emison judgment after it had been taken possession of by George Young, the agent of A. R. Colburn & Co., and moved to the east side of the Wabash railroad track."

The only question involved in this case is whether or not the levy of the execution first issued operated as a satisfaction of the judgment.

The validity of the bill of sale of February 2, 1883, is not questioned by defendant in error. The regularity of the proceedings in the county court, finding the property therein described in the plaintiffs in error, is in no way impeached. The evidence of Sheriff Ryan is not contradicted. On this uncontradicted evidence it must be conceded that from and after the 2d day of February, 1883, plaintiffs were the owners of the property, and before the levy of the 20th of February, 1883, their agent, Young, had taken possession of it; also that the levy was made—not by the direction of the plaintiffs in the execution, but by the defendant himself.

To hold that the levy under these facts operates as a satisfaction of the judgment would be to maintain the anomalous proposition that a defendant in execution may satisfy his judgment by turning out the property of the plaintiff in the execution. The bare statement of the proposition is a sufficient reason for its rejection.

While it may be sometimes stated in text books and decisions that the levy of an execution upon personal property,

sufficient in value to satisfy the same, will operate as a satisfaction of the judgment, yet a casual examination of the rule readily leads to the conclusion that it is not correctly stated in this general language.

In Montgomery v. Wayne et al., 14th Ill. 374, Caton, J., said: "The general proposition is undoubtedly true that the levy of an execution upon personal property, of value sufficient to satisfy it, *operates for the time being* as a satisfaction of the execution. But it is not an absolute satisfaction of it like an actual payment."

In Freeman on Judgments, Sec. 475, it is said that "none of the decisions assume that a levy produces any absolute satisfaction." And again in the same section the author says: "It is apparent that the satisfaction, if such it may be called, produced by a levy on personal property, is liable to be removed by a variety of circumstances." Therefore it is probable that the term *suspension* is more applicable to the effect of such a levy than the term satisfaction.

In the case of the People v. Hopson, 1st Denio, 574, Chief Justice Bronson says: "If the broad ground has not yet been taken it is time it should be asserted, that a mere levy on sufficient personal property, without anything more, never amounts to a satisfaction of the judgment. So long as the property remains in legal custody the other remedies of the creditor will be suspended." And so in this case the levy of February the 20th, 1883, was "for the time being" a satisfaction of the judgment. It suspended all other remedies of the plaintiffs. It was an obstruction to the final satisfaction of the plaintiff's debt, but how came it there? An execution is the plaintiff's process, and he has the right to control it. Under our statute he has the right to elect on what property not exempt from execution he will have it levied. When he has so elected he can not change his levy without the consent of the defendant in the execution. The officer making the levy can not of his own motion release a levy and seize other property. "The law will not permit the creditor to use his judgment for the purpose of annoyance and the oppression of his debtor." And this is the full scope of the decision in Smith

v. Hughes, 24th Illinois, 276, on this question. From the evidence in this case the plaintiff did not change *his* levy. The officer did not, of his own mere motion, change it. There is nothing to show an attempt to annoy or oppress. On the contrary the plaintiffs found a levy placed upon their own property by direction of the defendant, which being an obstruction and only an obstruction to the collection of their judgment they removed it by ordering the sheriff to release the levy.

Had the sheriff been allowed to proceed to a sale no benefit could rightfully have resulted to the defendant in error. On the contrary it would only have increased his costs, unless as we have before said he could insist upon the sale of the property of another to satisfy his debt. The fact that the execution was a lien on the property could not give him the right to have it sold to satisfy that lien in the absence of proof that it was sold subject thereto. We are unable to find any evidence in this record to justify the conclusion that the second execution and levy and sale thereunder were void or even irregular, and must therefore hold the judgment of the court below erroneous.

Reversed.